

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-18-00991-CV

**IN THE INTEREST OF K.N.J.** and K.J., Children

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00515
Honorable Richard Price, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:     Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: May 8, 2019

AFFIRMED

Appellant Rae Shawnda files this accelerated appeal from the trial court's order terminating her parental rights to her children, K.N.J. and K.J. Rae Shawnda challenges the sufficiency of the evidence to support the trial court's finding that termination is in the children's best interests. We affirm the trial court's judgment.

**Background**

Rae Shawnda is the mother of K.N.J. and K.J. The Texas Department of Family and Protective Services ("the Department") removed K.J. from Rae Shawnda's custody after he was born with cocaine in his system. The Department subsequently removed K.N.J. based on concerns of neglectful supervision by Rae Shawnda. The Department filed a petition in March 2018 to terminate Rae Shawnda's and the alleged fathers' parental rights to both children.

On December 13, 2018, the trial court held a bench trial. At the time of trial, K.N.J. was two years old and K.J. was nine months old. Neither of the alleged fathers were personally served and neither appeared for trial. Rae Shawnda appeared with counsel and announced "not ready," requesting more time to complete services. The trial court overruled Rae Shawnda's "not ready" announcement. The Department presented the following witnesses: the Department investigator, caseworker, and supervisor, as well as the court-appointed CASA volunteer. Rae Shawnda and her cousin also testified.

The Department investigator testified regarding Rae Shawnda's extensive history with the Department. Rae Shawnda's parental rights to five of her older children were terminated, and those children were adopted by Rae Shawnda's grandmother. Also, Rae Shawnda has two older children with whom she shares joint managing conservatorship with her aunt. At the time the Department removed K.N.J., the investigator believed K.N.J. and Rae Shawnda were living with Rae Shawnda's grandmother, aunt, and the other children in a home that from the outside appeared "debilitating" and "pretty run down." According to the investigator, the Department was concerned about placing K.N.J. and K.J. with Rae Shawnda's grandmother because the grandmother had allowed Rae Shawnda unsupervised contact with the other children after her parental rights were terminated. Rae Shawnda's grandmother once allowed Rae Shawnda to take the older children to the store, where she left them alone in the car and then was arrested for shoplifting.

The Department caseworker visited Rae Shawnda at her grandmother's home, although Rae Shawnda claimed she was not living there at the time. The home was visibly infested with roaches, but the Department supervisor testified Rae Shawnda did not demonstrate a sense of urgency to address the infestation and failed to acknowledge that roaches pose a safety risk to children living in the home. By the time of trial, Rae Shawnda had not obtained stable housing but claimed she would have a subsidized apartment by Christmas 2018. Rae Shawnda produced a

signed lease agreement for the apartment, but the Department caseworker expressed concern that Rae Shawnda had misrepresented to the landlord that her children would be occupants of the apartment. If the children were returned to her immediately, Rae Shawnda testified she would take them to live with her cousin in Houston.

Rae Shawnda admitted to an extensive history of drug use and admitted she used cocaine one week prior to giving birth to K.J. Rae Shawnda completed an out-patient drug treatment program but tested positive for cocaine shortly thereafter, in August 2018. The Department investigator testified Rae Shawnda claimed she tested positive for cocaine because she had had sex with one of the alleged fathers after he put cocaine on his penis. Rae Shawnda testified she was unaware of what the alleged father had done until she tested positive for cocaine, and she admitted she maintained a sexual relationship with the alleged father until three or four months prior to trial. Although Rae Shawnda submitted to additional urinalysis and hair follicle drug tests and did not test positive, the Department caseworker testified Rae Shawnda's test results were suspicious because there was zero cocaine in her system less than a week after the positive test. By the time of trial, Rae Shawnda had obtained a Narcotics Anonymous sponsor and was attending Alcoholics Anonymous/Narcotics Anonymous meetings weekly.

The Department caseworker prepared a service plan for Rae Shawnda with Rae Shawnda's input. In addition to completing out-patient drug treatment, Rae Shawnda successfully completed a parenting class and took a psychological exam. Although the Department believed counseling was critical to Rae Shawnda's plan, Rae Shawnda did not engage in counseling until late October 2018 and had only completed five sessions prior to trial. Rae Shawnda did not complete counseling, did not obtain stable housing, and only obtained part-time employment shortly before trial. Rae Shawnda visited the children weekly, and the visits were appropriate, but Rae Shawnda sometimes brought age-inappropriate toys. Although it was explained to Rae Shawnda that K.N.J.

has rotten teeth due to a lack of dental care and excessive sugar, Rae Shawnda continued to bring him sugary snacks and juice. Rae Shawnda testified she was unaware that the toys and the juice were inappropriate at the time. The Department investigator observed some visits and was concerned when Rae Shawnda "undressed both of the children . . . looking for marks or bruises and then accused the foster parents of drugging the children because they had a flat affect."

Both children have extensive medical needs. K.N.J. will need to have his rotted teeth removed and replaced, and he has respiratory issues. K.J. is under the care of six medical specialists and "has countless doctor's appointments that he has to attend." K.J. needs surgery to repair laryngomalacia, has sleep apnea that requires constant monitoring, has severe reflux for which he sees a specialist, has frequent respiratory infections, will need a bronchoscopy, and has needed an esophagram to monitor esophageal function. Around Thanksgiving 2018, K.J. was admitted to the hospital for severe body temperature fluctuations caused by sepsis related to kidney issues. According to the Department caseworker, Rae Shawnda blames the Department for the children's medical issues and has failed to take accountability for her role in the children's health problems.

K.N.J. and K.J. are placed together with foster parents who plan to adopt them. The foster mother is a Registered Nurse, and the Department supervisor testified the foster parents' medical background enables them to understand the children's medical needs and provide care accordingly. The Department caseworker testified the foster parents "have been on top of all of these medical appointments from the beginning" and have shown "they are dedicated to—to make sure that all [K.J.'s] medical needs are going to be taken care of." The foster parents also have installed cameras in K.J.'s bedroom to enable them to monitor his breathing at night. One of K.J.'s doctors told the Department that the foster mother's vigilance in seeking medical treatment for K.J. saved his life when he was hospitalized in November 2018. Both the Department caseworker and the CASA

volunteer testified the children were very bonded with the foster parents, and K.N.J. calls the foster mother "mom."

The Department caseworker testified Rae Shawnda has not demonstrated that she can care for the children, particularly their medical needs, and she has never asked how she can best prepare herself and her home for the children to be returned. The "bond is not really there" between Rae Shawnda and the children. The CASA volunteer testified Rae Shawnda has not demonstrated an ability to keep a close eye on both children at once, and K.J. in particular needs constant monitoring because of his health. The Department supervisor also testified Rae Shawnda has not demonstrated a good understanding of K.J.'s medical issues. Rae Shawnda testified she was not aware of many of the children's medical issues until only one week prior to trial. Rae Shawnda's cousin, who lives in Houston, testified she was willing to be a placement for the children but admitted she is not fully informed regarding K.J.'s medical issues.

Following trial, the trial court granted the Department's petition for termination and terminated Rae Shawnda's and the alleged fathers' parental rights to both children. Rae Shawnda appeals.

## Standard of Review

To terminate parental rights, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1), and (2) termination is in the best interests of the child. TEX. FAM. CODE ANN. §§ 161.001(b); 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We review the legal and factual sufficiency of the evidence using well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

**Discussion**

In a single issue, Rae Shawnda challenges the trial court's finding that termination is in the children's best interest.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining the best interest of a child, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

Here, while the children are too young to voice their desires, the children are bonded with the foster parents, and K.N.J. calls the foster mother "mom." The foster parents plan to adopt both children and have invested in measures to enable them to monitor the children's health. The foster parents have a stable home and have demonstrated a willingness to avail themselves of services and to advocate for the children's health care needs. The foster parents are particularly well-suited to care for K.N.J. and K.J. due to their medical background and demonstrated ability to monitor the children's health issues.

Although Rae Shawnda availed herself of some services and completed out-patient drug treatment, she provided no excuse for failing to complete all of her service plan prior to trial. The Department caseworker and supervisor each expressed concern that Rae Shawnda was continuing to use illegal drugs while the case was pending, based on her positive hair follicle test and the

oddity of subsequent clean tests. Rae Shawnda also admitted having a sexual relationship with one alleged father while the case was pending despite knowing about his drug use. At the time of trial, Rae Shawnda had not obtained stable housing. The CASA volunteer testified she is concerned about the children's safety in Rae Shawnda's custody because Rae Shawnda has not demonstrated an ability to keep a close eye on both children at once. The Department witnesses also expressed concern that Rae Shawnda failed to understand or appreciate the seriousness of the children's health issues and future medical needs, as well as her own role in causing those health issues.

After considering all of the evidence in the record in light of the *Holley* factors, we conclude there is sufficient evidence in the record supporting the trial court's best interest finding. We overrule Rae Shawnda's sole issue.

## Conclusion

Based on our review of the entire record, we conclude the evidence is legally and factually sufficient to support the trial court's best interest finding. Accordingly, we overrule Rae Shawnda's issue and affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice